# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VINCENT BUCKNER,<br><br>  Petitioner,<br><br>  v.<br><br>JON VARGA,<br><br>  Respondent. | Case No. 11-CV-50381<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Respondent's motion for reconsideration [78]. Respondent asks the Court to reconsider its prior decision to conduct an evidentiary hearing in connection with Petitioner's claim that the State knowingly introduced perjured testimony, which impacted the trial judge's sentencing decision. For the reasons explained below, the Court grants the motion.

### Background & Procedural History

In 2005, a jury found Petitioner Vincent Buckner guilty of predatory criminal sexual assault and aggravated criminal sexual assault in connection with the rape of an eleven-year-old girl. Petitioner's victim, L.D., was the daughter of Petitioner's friend. L.D. testified at Petitioner's trial, and she told the jury that she had sex with Petitioner on multiple occasions between 2001 and 2002. As a result of these sexual encounters, L.D. became pregnant, and she later gave birth to Petitioner's child. After the jury returned its verdict, the trial judge merged the aggravated criminal sexual assault and predatory criminal sexual assault counts and entered judgment

on the predatory criminal sexual assault count only. Petitioner moved for a new trial; the judge denied the motion and sentenced Petitioner to thirty years in prison.

Petitioner appealed, based upon the trial court's decision to limit his cross examination of the prosecution expert who had tested his DNA, L.D.'s DNA and the DNA of L.D.'s baby. The appellate court affirmed the trial court's judgment and sentence on several bases, including that Petitioner did not deny that L.D.'s baby – born when L.D. was twelve – was his child. Also significant to the court of appeals was the fact that the DNA expert did not herself analyze the DNA, but instead sent her results to a separate lab for analysis.

Petitioner moved for rehearing, repeating his arguments about the DNA expert, but also arguing that the trial judge erred when he refused to allow Petitioner to introduce a "letter written by L.D. contradicting her trial testimony." [19-2] at 4. That letter (really an affidavit), states as follows:

> 1. I was suppose to been the victim in this case against Vincent Buckner.
>
> 2. At trial I was forced into the court room by the State. I did not want to come into that court room because I had to lie on Vincent. I was picked up off my feet and carried into the court room and placed on the witness stand by force.
>
> 3. I told the State people and everybody else what really happened between me and Vincent. The State people scared me and had me really confused. They threaten to detain me and take my son away from me if I didn't say what they wanted me to say. My trial testimony was all a lie.
>
> 4. The truth is one time Vincent Buckner came over to our house and got real drunk and I took advantage of him sexually. I looked at his face and saw that he was so drunk that he did not know who I was or what was really going on. The next morning I told him what happen.

2

> Nothing else has ever happened between use. He has always treated me nice and respectful.
>
> 5. Even right now I am scared of the State people, but it is not fare that Vincent be locked up and I be forced to lie on him. At least I feel the truth should be told. Like I said I did want to tell the truth at trial but the State people had me scared and confused.
>
> 6. Two weeks after Vincent was convicted I went to visit him at the county Jail, Div. II. I wanted him to know that I lied on him because the State people forced me to by threatening to take my son and lock me up. Everybody I told thought it was wrong for them to force me to lie but I was scared.
>
> Pursuant to 735 ILCS 5/1-109 I declare under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief.

*Id.* at 8. The affidavit appears to have been signed initially on July 9, 2006; that date is crossed out and the date is rewritten for March 6, 2007. *Id.* The petition for rehearing was summarily denied. *Id.* at 11.

On December 3, 2007, Petitioner filed a petition for leave to appeal with the Illinois Supreme Court, raising only the arguments about the DNA expert. [19-2] at 12–41. The Illinois Supreme Court summarily denied the PLA on January 1, 2008. *Id.* at 42.

Petitioner filed a post-conviction petition raising a host of issues, including that the jury was prejudiced against him when complaining witness, L.D., was physically forced into the courtroom and that the trial court erred in failing to grant a mistrial due to the actions of the victim, L.D. [19-3] at 40. The court rejected the arguments, finding that L.D.'s behavior did not prejudice the jury:

> When the victim, L.D., was called to testify during petitioner's trial, she was resistant and the State had to attempt to force her

3

> through the doors of the courtroom. Petitioner claims that this event
> prejudiced the jury against him. He argues that had he been the one
> to physically force the victim into the courtroom that day, he would be
> subject to criminal charges. This argument is irrelevant and does
> nothing to support his claim. In a post-conviction proceeding, petitioner
> bears the burden to establish a substantial deprivation of his
> constitutional rights. *People v. Coleman,* 206 Ill. 2d 261,277 (2002).
> While the Sixth and Fourteenth amendments to the United States
> Constitution grant a defendant the right to a fair and impartial jury
> trial, this court views the event as immaterial and non-prejudicial.
> Here, the brief disturbance happened outside the doors to the
> courtroom. The victim did not enter while the jury was seated.
> When the incident occurred, the jury was removed from the
> courtroom; then the victim entered. Upon the jury's return, the
> victim was seated in the witness chair. Not only was the
> interruption short-lived and outside the presence of the jury, but
> petitioner fails to demonstrate how its impact could have possibly
> affected the result of the trial. L.D. testified at trial to engaging
> in sexual intercourse with petitioner multiple times. One of these
> encounters occurred nine months before L.D. gave birth to a son,
> whose DNA sample matched a sample provided by petitioner.
> The State's evidence was overwhelming, and petitioner's claim is
> patently without merit.

*Id.* at 44.

Petitioner also argued in his post-conviction petition that he was actually innocent, and he based his claim on L.D.'s affidavit. The court rejected this claim as well:

> L.D's affidavit does not provide evidence that would possibly change the
> result on retrial. She merely alleges that petitioner was drunk. The
> judgment of intoxication by an 11 year old victim of sexual abuse, as
> presented in an affidavit that recants trial testimony is not enough to
> conclusively negate the existence of required mental state for conviction.

*Id.* at 56–57. Petitioner appealed the dismissal of his post-conviction petition, and the court of appeals affirmed. *Id.* at 58–65. He petitioned for rehearing, and the court

4

of appeals denied his petition. *Id.* at 162; [19-4] at 1. He then filed a petition for leave to appeal, [19-4] at 2–19, which the Illinois Supreme Court denied. [19-5] at 75.

Proceedings Before Judge Zagel

After his postconviction petition was denied, on December 23, 2011, Petitioner initiated this federal case by filing a petition for writ of habeas corpus raising twelve claims (claims A through L). *See* [1]. On January 4, 2013, Judge James B. Zagel, to whom the case was previously assigned, determined that ten of Petitioner's twelve claims were defaulted, and that only two (claims H and L) were properly before him. *See* [30] at 8. Judge Zagel then denied claim L on the merits. *Id.* at 8–9. But Judge Zagel determined that ostensibly the state courts failed to consider Petitioner's claim regarding L.D.'s allegedly perjured testimony (claim H) and thus found that an evidentiary hearing was necessary before that claim could be resolved. *See* [26]. In an amended order issued January 10, 2013, Judge Zagel held that a hearing was required because neither the state trial judge, nor the state appellate court "fully considered the potential impact of L.D.'s affidavit on Petitioner's prison sentence – a sentence, it is worth nothing, of 30 years." [30] at 10. Noting that, under the pre-AEDPA standard, "a federal hearing is required if (1) a habeas petitioner alleges facts which, if proved, would entitle him to relief and (2) the state courts – for reasons beyond the control of the petition – never considered the claim in a full and fair hearing." *Id.* at 11 (citing *Richardson v. Briley*, 401 F.3d 794, 800 (7th Cir. 2005)).

Judge Zagel commenced the evidentiary hearing on January 10, 2013 but continued the matter to allow the parties to conduct discovery. *See* [67]. Judge Zagel

5

did not set a deadline for the close of such discovery. By April 10, 2017, when the case was reassigned to this Court, the parties still had not completed that discovery. Thus, after discussing the status of discovery with the parties, this Court set a discovery deadline of October 12, 2017. *See* [72]. Based upon the representations of counsel, this Court then reset the evidentiary hearing for January 3, 2018 (almost five years after the initial hearing). The Court reset the evidentiary hearing date twice, again at the parties' request, and set the case for a status hearing the last time the parties indicated that they still were not ready to proceed. *See* [73], [74], [76].

On March 27, 2018, the parties appeared at the status hearing and reported that, when deposed, L.D. did not testify consistent with her affidavit. In fact, counsel for Petitioner reported, she testified to the contrary. As a result, the Court granted Petitioner leave to amend his petition, assuming that the claim, as pled, could no longer proceed. But Petitioner did not file an amended petition.

On April 3, 2018, Respondent filed a motion asking the Court to reconsider the decision to hold an evidentiary hearing [78].

## Discussion

Federal Rule of Civil Procedure 54(b) provides that: any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. A motion to reconsider should be granted

6

when: (1) the Court's decision rests on grounds outside the adversarial issues presented to the Court by the parties; (2) the Court patently misunderstood a party; (3) the Court made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the Court; or (5) where there has been a controlling or significant change in the facts of the case. *E.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990).

As a practical matter, the legal basis for holding a hearing has not changed. As Judge Zagel correctly held, a habeas petitioner is not entitled to an evidentiary hearing as a matter of course. *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). But a hearing is warranted under the pre-AEDPA standard "if (1) a habeas petitioner alleges facts which, if proved would entitle him to relief; and (2) the state courts – for reasons beyond the control of the petitioner – never considered the claim in a full and fair hearing." *Richardson v. Briley*, 401 F.3d 794, 800 (7th Cir. 2005). Because Petitioner has not amended his petition, it is still the case that Petitioner has alleged facts which, if proved, would entitle him to relief and that the state courts – for reasons beyond the control of the petitioner – never considered the claim in a full and fair hearing. Indeed, counsel for Petitioner correctly notes in his response brief, "[i]f L.D.'s affidavit is taken as being true, then an evidentiary hearing continues to be warranted." [79] at ¶ 8.

The factual landscape of the case has changed dramatically, however, as discovery has shown that the facts asserted in the affidavit are not true. At her

7

deposition in these proceedings, L.D. testified that Petitioner asked her to lie during trial and say that Petitioner got drunk at L.D.'s mother's house and that she took advantage of him; instead, she testified, she told the truth at trial. [78-1] at 25–26. Petitioner's counsel admits in his response, consistent with his representations in court, that, when she was deposed, L.D. denied the contents of the affidavit and even denied signing the affidavit. As a result, holding an evidentiary hearing would be an utter waste of time and resources, as Petitioner appears to have no evidence now to show that L.D.'s affidavit is true. Nor has he proffered any evidence at all to support his claim that prosecutors knowingly presented perjured testimony.

Petitioner's counsel represents that two witnesses, Petitioner's father and the father's companion, if questioned, would testify that they drove L.D. to a currency exchange to execute the affidavit. Such testimony may contradict L.D.'s denial that she signed the affidavit, but it still fails to establish the truth of the facts included in the affidavit. Based upon the parties' submissions, not a single witness has testified that the facts stated in the affidavit are true. In fact, when questioned by Petitioner's counsel, L.D. testified at her deposition that the story reflected in the affidavit was contrived by Petitioner, and she flatly rejected it. L.D. unequivocally stated at her deposition that her trial testimony was true. Petitioner has had more than five years to find evidence to support his claim that L.D. lied, and he has failed to do so (despite his apparent attempts to obstruct justice, suborn perjury and further harass the child victim of his sexual assault).

Petitioner's claim requires proof, not only that L.D.'s trial testimony was false, but that the State knowingly presented the perjured testimony. Again, after more than five years, Petitioner has offered no witness or documentary evidence to support the notion that the prosecutors presented perjured testimony. Even in response to the motion for reconsideration, Petitioner fails to offer anything on this point. If Petitioner cannot show that L.D. perjured herself at trial, he cannot show that the State knowingly presented L.D.'s perjured testimony. And, certainly on the record before it, this Court cannot, and does not, find that the State knowingly presented perjured testimony. As a result, the record does not warrant any further hearing and Petitioner's claim H fails.

Certificate of Appealability

Under § 2253(c)(2), a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." An applicant has made a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez v. Knight*, 653 F.3d 445, 446-47 (7th Cir. 2011) (internal citations and quotation marks omitted). Here, the Court concludes that the Petitioner has not made a substantial showing of the denial of a constitutional right, nor has he shown that reasonable jurists would debate the resolution of his claims. Accordingly, the Court declines to issue a certificate of appealability.

Conclusion

Given the significant change in the facts of this case, the motion for reconsideration [78] is granted.  Additionally, given that the record before the Court contains nothing to suggest that the prosecutors knowingly presented perjured testimony at Petitioner's trial or sentencing, Petitioner's claim H is denied on the merits.  For this reason, and for the reasons previously explained by Judge Zagel, the petition for writ of habeas corpus is denied.  The Court declines to issue a certificate of appealability.  The Clerk is instructed to enter a judgment in favor of Respondent and against Petitioner.  Civil case terminated.

Dated:  September 17, 2018

Entered:

_____
John Robert Blakey
United States District Judge